*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*FAXON & BOOTH GOLF DESIGN, LLC,* )
                                                        )
                     *Plaintiff*                 )
                                                        )
*v.*                                                  )          *Civil No. 09-135-P-S*
                                                        )
*SOUTH SHORE TRI-TOWN*              )
*DEVELOPMENT CORPORATION,*    )
*et al.,*                                            )
                                                        )
                     *Defendants*             )

*RECOMMENDED DECISION ON MOTION TO DISMISS*

Defendant LNR South Shore, LLC, moves to dismiss the claims asserted against it in this action, removed from the Maine Superior Court (York County). It contends that this court lacks personal jurisdiction over it in this dispute alleging breach of a design services agreement for a golf course to be located in Massachusetts. I recommend that the court grant the motion in part.

## I.  Applicable Legal Standard

The motion invokes Fed. R. Civ. P. 12(b)(2), governing motions to dismiss for lack of personal jurisdiction. Defendant LNR South Shore, LLC's Motion to Di[s]miss for Lack of Personal Jurisdiction ("Motion") (Docket No. 16) at 1.

A motion pursuant to Rule 12(b)(2) raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F. Supp. 366, 367 (D. Me. 1992) (citation and internal quotation marks omitted). The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices.

1

*Archibald v. Archibald*, 826 F. Supp. 26, 28 (D. Me. 1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar-Tec Prods., Inc.* 967 F.2d 671, 675 (1st Cir. 1992). However, for purposes of considering a Rule 12(b)(2) motion, the court will accept properly supported proffers of evidence as true. *Id*.

Because this is a diversity case, *see* Civil Cover Sheet (Docket No. 2), the court's authority to exercise personal jurisdiction over a non-resident defendant is limited by the State of Maine's long-arm statute. *See American Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989). As Maine's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the "fullest extent permitted by the due process clause of the United States Constitution, 14th Amendment," 14 M.R.S.A. § 704-A(1), the inquiry focuses on whether the assumption of jurisdiction would violate due process.

Due process requires that each defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Minimum contacts are determined by whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

To establish personal jurisdiction over a non-resident defendant, the plaintiff must demonstrate that the defendant is subject either to "general" jurisdiction or "specific" jurisdiction. "[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips*

2

*Exeter Acad. v. Howard Phillips Fund, Inc*., 196 F.3d 284, 288 (1st Cir. 1999) (citations omitted).   Absent general jurisdiction, this court may still assume jurisdiction if the claim "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum."  *Id*.

The Maine Law Court has determined that

> before exercising its jurisdiction over an out-of-state defendant, the court must conclude that (1) Maine has a legitimate interest in the subject matter of this action; (2) the defendant, by its conduct, should reasonably have anticipated litigation in Maine; and (3) exercise of jurisdiction by Maine's courts would comport with traditional notions of fair  play and substantial justice.

*Frazier v. BankAmerica Int'l*, 593 A.2d 661, 662 (Me. 1991).  Once the plaintiff demonstrates that Maine has a legitimate interest in the controversy and that the requisite minimum contacts exist such that the defendant should reasonably expect litigation in this state, the burden shifts to the defendant to prove that the exercise of jurisdiction would not comport with fair play and substantial justice.

## II.  Factual Background

The complaint includes the following relevant factual allegations.

The plaintiff is a Rhode Island limited liability company that is registered to do business in the State of Maine.   Complaint (Attachment 1 to Notice of Removal (Docket No. 1)) ¶ 1.  Defendant South Shore Tri-Town Development Corporation ("SSTTDC") is a body politic and corporate established under Chapter 301 of the 1998 Massachusetts Acts and Resolves.  *Id*. ¶ 2.  Defendant LNR South Shore, LLC ("LNR") is a Delaware limited liability company.  *Id*. ¶ 3.

On or about May 18, 2004, the plaintiff and SSTTDC executed an agreement to provide certain architectural and design services for the development of a golf course on property located in South Weymouth, Massachusetts ("the Agreement"), which was part of the redevelopment of

3

the former South Weymouth Naval Air Station ("Navy Base"). *Id.* ¶ 4. On or about May 5, 2004, SSTTDC and LNR executed a Disposition and Development Agreement ("Original DDA") which, in effect, appointed LNR as the master developer of the Navy Base redevelopment and contemplated the transfer of the Navy Base property to SSTTDC within certain time frames. *Id.* ¶ 5. Over the next three years, the plaintiff provided architectural and design services for the golf course to be built as part of the Navy Base redevelopment. *Id.* ¶ 6.

Most of the services provided by the plaintiff came under the design phase of the Agreement, but the boundary work and the grading and integration with infrastructure, among other items, were finished as part of the permitting process, which would have come under the construction documents phase of the Agreement. *Id.* ¶ 7. The plaintiff provided its services under the guidance and supervision of LNR, and all invoices had to be approved by LNR before payment. *Id.* ¶ 8.

Due to LNR's cash flow problems and delays in payment, the plaintiff billed only for the work that was done during the design phase and did not present any bills for the work that was performed under the construction phase of the Agreement. *Id.* ¶ 9. On or before March 24, 2008, SSTTDC and LNR entered into an Amended and Restated Disposition and Development Agreement ("Amended DDA"), which provided, *inter alia*, that the golf course property would be included in the land transferred to LNR, and that LNR would be responsible for any further development of the golf course. *Id.* ¶ 10.

The Amended DDA provided that, if LNR did not complete construction of the golf course in the fourth year after conveyance, then SSTTDC could request that LNR reconvey the golf course property to it. *Id.* ¶ 11. In addition, if the golf course were constructed by SSTTDC,

4

then LNR would pay SSTTDC an additional $3,000,000.  *Id*.  If the property were kept as open space, LNR would be obligated to pay SSTTDC $1,000,000.  *Id*.

On or about June 9, 2008, SSTTDC sent a letter to the plaintiff terminating the Agreement.  *Id*. ¶ 12.  The letter refers to the following language from Part 5 of the Agreement: "In addition, the owner may terminate this Agreement upon 10 days written notice to the Golf Course Architect in the event the project is 'permanently abandoned.'"  *Id*. ¶ 13.   The golf course development was not "permanently abandoned."  *Id*. ¶ 14.  At all times, the plaintiff was ready, willing, and able to perform the services called for in the Agreement.  *Id*. ¶ 15.  SSTTDC breached the Agreement by purporting to terminate it.  *Id*. ¶ 16.  In addition, the plaintiff was not fairly compensated for its work performed under the Agreement.  *Id*. ¶ 17.

LNR was aware of the Agreement throughout the time that the plaintiff was providing architectural and design services for the golf course project.  *Id*. ¶ 19.  Part 7 of the Agreement provides: "The Owner and the golf Course Architect each bind himself, successors and assigns to all covenants of this Agreement."  *Id*. ¶ 20.  LNR constituted a successor and assign of SSTTDC by operation of the Amended DDA.  *Id*. ¶ 21.  LNR located a golf course developer, which coordinated with another golf architect to complete the project.  *Id*. ¶ 22.   As successor and assign to SSTTDC, LNR breached the Agreement.  *Id*. ¶ 24.

Part 6 of the Agreement provides:

> Not[]withstanding any termination of this agreement: (i) Drawings (including Working Drawings) and Specifications as instruments of service are and shall remain the property of the Golf Course Architect whether the Project for which they are made is executed or not and (ii) Drawings (including Working Drawings) and Specifications are not to be used by the Owner on other projects or extension to this project except by agreement in writing and with appropriate compensation to the Golf Course Architect.

5

*Id*. ¶ 27.   After receiving SSTTDC's June 2008 letter, the plaintiff requested that all original documentation prepared as part of its services be returned to it and that none of this proprietary information be used by LNR.  *Id*. ¶ 28.  SSTTDC did not return the documents or digital files, and LNR has continued to use the plaintiff's proprietary work in its continued development of the golf course property.  *Id*. ¶ 29.

The current layout of the golf course to be built by LNR uses the layout and design that was created by the plaintiff under the Agreement, as well as the construction-type documents that were prepared as part of the permitting process.  *Id*. ¶ 30.  The plaintiff seeks an order prohibiting the continued use of its proprietary work and drawings.  *Id*. ¶ 31.  It also seeks payment for the value of the benefits associated with the use of its proprietary information.  *Id*. ¶ 36.

## III.  Discussion

LNR contends that this court lacks jurisdiction over it because

> LNR is not a signatory to the design services agreement at issue, has no physical presence in the State of Maine, has engaged in no conduct or activities with the State of Maine, and has otherwise done nothing to avail itself of any rights under or benefits of Maine law.

Motion at 1.  The plaintiff has stated explicitly that it is alleging only specific jurisdiction, not general, Plaintiff's Opposition to Defendant LNR South Shore, LLC's, Motion to Dismiss ("Opposition") (Docket No. 19) at [3] ("It is obvious that the Plaintiff is not asserting that there is general personal jurisdiction in this matter, and is basing its case on the existence of specific jurisdiction.").  I will therefore dispense with discussing general jurisdiction.

## A.  Count II

Turning to the plaintiff's first count against LNR, Count II, LNR asserts that it engages in real property development "exclusively within the Commonwealth of Massachusetts," that it did

not have "any dealings of any nature" with the plaintiff within the State of Maine, and that the fact that it did not sign the Agreement or agree to accept assignment of the Agreement means that it cannot be considered SSTTDC's successor or assign as a matter of law. Motion at 8-9. Specifically, LNR relies on the following language from the Agreement: "Neither the Owner nor the Golf Course Architect shall assign or transfer his interest in this Agreement without the written consent of the other." Agreement Between Owner and Golf Course Architect (Exh. A to Complaint) Part 7.

The plaintiff does not respond to this argument, which, with respect to Count II, the plaintiff's breach of contract claim against LNR, is dispositive. The complaint does not allege that the plaintiff gave written consent to any assignment or transfer of SSTTDC's interest in the Agreement to LNR. Accordingly, the complaint fails to state a claim on which relief may be granted against LNR for breach of the Agreement.[1] LNR is entitled to dismissal of Count II.

## B. Counts III and IV

Addressing the two remaining counts asserted against it, Counts III and IV, LNR argues that it does not possess sufficient contacts with Maine to allow it to be haled into this court. Motion at 9-11. Specifically, it asserts that the only paragraph of the complaint to mention Maine, Paragraph 1, alleges only that the plaintiff "has registered authority to do business in the State of Maine," which is insufficient to establish personal jurisdiction in this court. *Id.* at 10. Even if some of the design work under the Agreement was done by the plaintiff in the State of Maine, LNR contends, that was "unilateral activity" by the plaintiff that is "insufficient as a matter of law to support personal jurisdiction over LNR in the Maine courts." *Id.*

The plaintiff responds that the following establishes the necessary minimum contacts:

---

[1] Strictly speaking, LNR did not expressly assert the applicable subsection of Rule 12 as a basis for its motion to dismiss, *see* Fed. R. Civ. P. 12(b)(6), but the argument is clearly made in its motion and therefore is properly before the court.

> LNR took the lead role in directing [the plaintiff] in its design and lay[]out of the golf course development.  As indicated by the various e-mails attached to the Booth Declaration . . ., directions were given on particular aspects of the development by LNR; LNR sought specific information from Booth [one of the plaintiff's principals] for the application process; LNR coordinated both conference calls and other meetings between the various professional[s] working on the project; and as part of their agreement with SSTTDC, LNR reviewed, approved and appropriated money for the work performed by [the plaintiff] . . . .  All these activities by LNR in Maine were conducted via e-mail, by phone, by fax, or by mail.
>
> * * *
>
> These contacts with [the plaintiff] in Maine were instrumental both [sic] in the production of the work product; the violation of the contract; and the unlawful retention of the proprietary work of [the plaintiff].

Opposition at [4]-[5].[2]

In their submissions, the parties do not seriously dispute that Maine has a legitimate interest in the subject matter of the remaining claims against LNR in this action, a Maine resident's attempt to recover its own intellectual property and lawful compensation for the wrongful use of that property.  Rather, it is the second element of the *Frazier* test, whether LNR should reasonably have anticipated litigation in Maine, that draws the most attention from both parties.

### 1. First Circuit Analysis:  Directly Arising Out Of.

The First Circuit has stated the elements of the federal specific-jurisdiction analysis for cases based on diversity jurisdiction, like this one, as follows:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's forum-state contacts must represent a purposeful availment

---

[2] As LNR points out, Defendant LNR South Shore, LLC's Reply Relative to its Motion to Di[s]miss ("Reply") (Docket No. 20) at 4, an affidavit that the plaintiff has submitted establishes that SSTTDC, not LNR, made any payments that were made to the plaintiff.  Affidavit of William Bradley Booth (Attachment 1 to Opposition) ¶ 6. *See also* Declaration of Kevin R. Chase (Exh. 1 to Motion) ¶ 17.  Given this fact, it is difficult to understand how LNR "appropriated" the money paid to the plaintiff, but, in any event, payments made by SSTTDC to the plaintiff do not provide any basis for the exercise of this court's jurisdiction over LNR.

of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Nowak v. Tak How Investments, Ltd*., 94 F.3d 708, 712-13 (1st Cir. 1996) (quoting *Pritzker v. Yari*, 42 F.3d 53, 60-61 (1st Cir. 1994).

To the extent that the first element of this analysis differs from the first element of the state-law test, *but see Telford Aviation, Inc. v. Raycom Nat'l, Inc.*, 122 F.Supp.2d 44, 46 n.3 (D. Me. 2000) (differences are "purely semantic"), it is clear that the plaintiff's claims against LNR, at the very least, relate to LNR's Maine activities, which in this case are e-mails, telephone calls, faxes, and letters.[3]   LNR emphasizes its lack of physical presence in the state of Maine, but physical presence is not necessary.  "The transmission of information into [the forum state] by way of telephone or mail is unquestionably a contact for purposes of [personal jurisdiction] analysis."  *Scott v. Jones*, 984 F. Supp. 37, 44 (D. Me. 1997) (citation and internal quotation marks omitted).  In other words, LNR's "in-state conduct" gave rise to the plaintiff's cause of action against it (legal cause), and the alleged injury would not have occurred but for LNR's "in-state conduct" (cause in fact), in short, thus establishing proximate cause.  *See New Life Brokerage Servs., Inc. v. Cal-Surance Assocs., Inc*., 222 F.Supp.2d 94, 103 (D. Me. 2002).

*2.  Purposeful Availment.*

The second element of both the state and federal tests is purposeful availment.  On this point, the plaintiff asserts:

There [were] approximately three years of communication by LNR with [the plaintiff] during the course of the services provided by the Plaintiff

---

[3] LNR's assertion that the e-mails and other forms of communication, rather than constituting the conduct giving rise to the claim for purposes of specific-jurisdiction analysis, must instead "relate to conduct by LNR in Maine," Reply at 5, is unsupported by citation to authority and imports an additional element of proof into the analysis which does not appear to me to be consistent with the existing case law on the subject.

> in this case.  These contacts certainly made it reasonably foreseeable to
> LNR[] that Maine would take an interest and have the ability to
> adjudicate any claims that might arise from these activities[.]

Opposition at [5] (citing a case from the District of New Hampshire).  LNR responds, in

conclusory fashion, that the cited communications "merely establish that LNR communicated

with [the plaintiff] with respect to aspects of the golf course design and with respect to [the

plaintiff's] receipt of payment from SSTTDC."  Reply at 5.  LNR does not suggest why this is

not enough to meet the plaintiff's *prima facie* burden on this element.  From all that appears,

LNR's contacts with the plaintiff were voluntary and such that it could reasonably anticipate

being haled into court in Maine. *Tak How*, 94 F.3d at 716.  Nothing more is required.

### 3. Gestalt Factors.

Moving to the third and final element of the analysis, the "gestalt factors" to which the

First Circuit test refers are

> (1) the defendant's burden of appearing, (2) the forum state's interest in
> adjudicating the dispute, (3) the plaintiff's interest in obtaining
> convenient and effective relief, (4) the juridical system's interest in
> obtaining the most effective resolution of the controversy, and (5) the
> common interest of all sovereigns in promoting substantive social
> policies.

*Id*. at 717 (citation omitted).  In the Law Court's formulation, this element deals with concepts of

fair play and substantial justice.  The burden is on LNR on this third and final element.

LNR contends that the exercise of this court's jurisdiction over it in this case would be

"manifestly unreasonable" because the plaintiff "has made literally no showing that any activity

by LNR, instrumental to, or causative of, [its] claims, occurred in Maine or that LNR did

anything to purposefully avail itself of Maine law or a Maine forum."  Reply at 6.  Since I

disagree with the premise of this argument, I cannot subscribe to it.

LNR also assets that "not one of the Gestalt factors militates in favor of requiring LNR to defend itself in Maine." Motion at 11. Again, I disagree. While LNR's "operations, employees and witnesses are each in Massachusetts," *id*., an apparent reference to the first gestalt factor, this court has observed that the distance between Maine and Massachusetts is not sufficient to render it onerous for a citizen of one to appear in a court in the other. *E.g., Forum Fin. Group v. President & Fellows of Harvard College*, 173 F.Supp.2d 72, 92 (D. Me. 2001).

LNR goes on to state that "[t]here is simply nothing about this case that suggests that Massachusetts courts would be unable to provide an effective or convenient resolution of the parties' controversy or that this Court's interest in adjudicating this dispute is any greater than the interests of the Massachusetts courts[,]" Motion at 11, but neither formulation is the test under any of the gestalt factors. Here, Maine's interest in adjudicating the dispute is at least as strong as that of Massachusetts, the plaintiff's interest certainly favors resolution in this court, the case would most likely be concluded earlier in this jurisdiction than it would be in the Massachusetts state or federal courts, and the fifth gestalt factor favors neither jurisdiction. On balance, therefore, and admittedly without a strong indication on any single factor, the gestalt factors favor Maine, making resolution of the dispute in this forum compatible with traditional notions of fair play and substantial justice.

LNR is not entitled to dismissal of Counts III and IV of the complaint under Fed. R. Civ. P. 12(b)(2).

### IV. Conclusion

For the foregoing reasons, I recommend that defendant LNR's motion to dismiss be **GRANTED** as to Count II and otherwise **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of June, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge